W. CARROLL STEPHENSON, JR., Plaintiff v. TOWN OF GARNER, a Municipal Corporation, RONNIE WILLIAMS, JACKIE JOHNS, SR., and JOHN ADAMS, Defendants

No. COA99-43

(Filed 1 February 2000)

**1. Zoning— conditional use permits—unfair trade practices claims—aldermen**

The trial court did not err by dismissing plaintiff's Chapter 75 unfair trade practices claims against the Garner aldermen, based on their alleged inducement of Sprint to enter into the Garner-Sprint Lease by denying Sprint's conditional use permit (CUP) petition seeking to place a cellular tower on plaintiff's property, and the town's subsequent execution of the Garner-Sprint Lease, because: (1) the trial court's order did not compel the aldermen to approve Sprint's CUP petition based on evidence from the first hearing, but instead remanded the matter to the board for further proceedings; and (2) the trial court never ruled on the sufficiency of the new evidence in support of the aldermen's second denial of Sprint's CUP application.

**2. Zoning— conditional use permits—unfair trade practices claims—town**

The trial court did not err by dismissing plaintiff's Chapter 75 unfair trade practices claims against the Town of Garner, based on its alleged inducement of Sprint to enter into the Garner-Sprint Lease by denying Sprint's conditional use permit (CUP) petitions seeking to place a cellular tower on plaintiff's property, and the town's subsequent execution of the Garner-Sprint Lease, because a city or town may not be sued under Chapter 75.

**3. Zoning— conditional use permits—interference with contractual relations—aldermen—legislative immunity**

The trial court did not err in dismissing plaintiff's claims of interference with contractual relations against the Garner aldermen based on their denial of a conditional use permit because the aldermen may claim legislative immunity since: (1) conditional use permitting requires the exercise of substantial discretion on the part of local officials in deciding important community-wide land use policies; and (2) even if the trial court could not dismiss plaintiff's claim based on the lack of specificity in the pleadings,

plaintiff only seeks monetary damages from the government and the aldermen acting in their official capacities.

**4. Zoning— conditional use permits—interference with contractual relations—town**

Although plaintiff could not allege a claim for interference with contractual relations against the Town of Garner based on the right to income under an option contract in existence at the time the Garner-Sprint Lease was executed since plaintiff had no contract rights at the time the Garner-Sprint Lease was executed, the trial court erred in dismissing plaintiff's claim of interference with contractual relations against the Town based on plaintiff's right to future income under the Stephenson-Sprint Lease, had the Town eventually approved Sprint's conditional use permit, because viewing the facts in the light most favorable to plaintiff reveals: (1) the possibility of protracted litigation presented the Town with an opportunity to lease the top of its water tower to Sprint; (2) the execution of the Garner-Sprint Lease may have prompted Sprint's decision not to exercise its option under the Stephenson-Sprint Lease; and (3) the Town cannot claim governmental immunity since the execution of a lease, unlike the enactment and enforcing of zoning laws, is not an exercise of "police powers" delegated to the Town by the State.

Appeal by plaintiff from order entered 23 November 1998 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 15 November 1999.

In April of 1994, plaintiff-appellant Stephenson (Stephenson) contracted with Sprint Cellular Company (Sprint) for an option to lease to Sprint a portion of Stephenson's land for the location of a cellular tower (the Stephenson-Sprint Lease). The option was conditioned on a grant of a conditional use permit (CUP) from defendant-appellee Town of Garner (the town). A CUP must be approved by a majority of the defendant-appellees Board of Aldermen (the aldermen).

On 1 June 1994, Sprint filed a CUP application with the town. At a 19 June 1994 hearing, three Garner residents opposed to the proposed tower expressed their concern that the tower would endanger public health and safety and would not be in harmony with the area in which it was to be located. In support of their application, Sprint presented expert testimony and exhibits showing that the tower posed no substantial danger to public health and safety, would not

STEPHENSON v. TOWN OF GARNER

[136 N.C. App. 444 (2000)]

materially affect local property values, would be in harmony with the surrounding community and would conform with all relevant land use ordinances. On 1 August 1994, the aldermen concluded that the proposed use was not in harmony with the surrounding neighborhood and denied Sprint's CUP application by a 3-2 vote. On 22 February 1995, Sprint filed a petition for judicial review in Wake County Superior Court. On 3 March 1995, Superior Court Judge Robert Farmer found that (1) the aldermen's denial (based on the testimony of the three Garner residents) was arbitrary and capricious and (2) Sprint's evidence was "competent and substantial" to support an issuance of a CUP. Judge Farmer therefore remanded the case to the aldermen for "further proceedings in accordance with . . . judgment."

The same day, Garner's attorney wrote to interested landowners that the town would not appeal Judge Farmer's decision because (1) Judge Farmer was justified in concluding that there was "not a substantial weight of technical evidence in opposition" to the CUP and (2) "if another hearing were held on the subject, the evidence would be pretty much what it was in the [original CUP] hearing."

On 3 April 1995, the aldermen again held hearings on the Sprint's CUP application, taking additional testimony from neighbors as to the adverse effects of the tower on neighborhood aesthetics and allowing the introduction of newspaper articles about electromagnetic fields. Sprint presented evidence (similar to that presented at the prior CUP hearing) that the proposed tower posed no health or safety risks whatsoever to the surrounding community. Following this second hearing, the aldermen again denied Sprint's application by a 3-2 vote.

On 13 April 1995, Sprint filed a Motion to Compel approval of the Sprint's CUP application in Wake County Superior Court, arguing that (1) the aldermen's actions were contrary to the town's land use ordinance and in direct defiance of Judge Farmer's order and (2) Sprint was losing $2000 for every day that they lacked a CUP. The town responded to Sprint's motion by offering to settle the matter by locating Sprint's cellular tower on top of the town water tower. On 1 May Sprint agreed to lease the top of the water tower (the Garner-Sprint Lease). Sprint's litigation with the town was subsequently ended by a consent judgment entered 4 May 1995.

On 3 February 1998 Stephenson filed the instant action against the town and the aldermen alleging that the aldermen and the town

conspired to force Sprint to abandon the Stephenson-Sprint Lease and enter into the Garner-Sprint Lease. The Garner-Sprint Lease names only the Town of Garner as lessor, and Stephenson does not allege in his complaint that the aldermen approved the Garner-Sprint lease. Stephenson argues that defendants' conduct constitutes (1) interference with contractual relations between Stephenson and Sprint and (2) unfair and deceptive trade practices.

In their answer, defendants moved to dismiss pursuant to N.C. R. Civ. P. 12(b)(6), denied Stephenson's allegations and asserted, in pertinent part, (1) that Stephenson lacked standing to appeal the denial of Sprint's CUP application; (2) that the aldermen and board were immune to suit; and (3) that Stephenson failed to prove that he suffered a legal harm or, if plaintiff had been harmed, that his injuries were not proximately caused by defendants. Thereafter, defendants moved to dismiss pursuant to N.C. R. Civ. P. 12(c).

Following a change of venue from Johnston County to Wake County Superior Court, the trial court granted defendants' motions to dismiss. Plaintiff Stephenson appeals.

*Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Edward L. Eatman, Jr. and Holly L. Saunders, for defendant-appellees.*

EAGLES, Chief Judge.

In reviewing the trial court's dismissal of Stephenson's claims under Rules 12(b)(6) or 12(c), we evaluate all facts alleged and permissible inferences therefrom in the light most favorable to Stephenson. Shuford, N.C. Practice and Procedure, §§ 12-8, 12-10. If the facts as alleged by the plaintiff do not either (1) give rise to any claim upon which relief may be granted, Shuford, § 12-8, citing *Andrews v. Elliot*, 109 N.C. App. 271, 426 S.E.2d 430 (1993), or (2) show that the nonmoving party is entitled to judgment as a matter of law, Shuford, § 12-10, citing *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494 (1974), then we must affirm the trial court.

[1] We first address whether the trial court properly dismissed plaintiff's Chapter 75 unfair trade practices claims. Stephenson argues that (1) the aldermen's "inducement" of Sprint to enter into the Garner-Sprint Lease by denying Sprint's CUP petitions "in violation of a court order" and (2) the town's execution of the Garner-Sprint Lease con-

stitute "[unlawful] unfair . . . acts or practices in or affecting commerce." G.S. § 75-1.1. We disagree.

Stephenson argues that the aldermen's "intentional violation of a court order" by denying Sprint's CUP application on rehearing was also a violation of public policy, establishing the aldermen's actions as "unfair" under G.S. § 75-1.1. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403-04 (1981). Viewing the facts in the light most favorable to the plaintiff, we do not agree that Judge Farmer's order compelled the aldermen to approve Sprint's CUP petition, making the aldermen's second denial of Sprint's petition an illegal act. Based on "substantial, competent and material evidence" in the record of the first CUP hearing, Judge Farmer concluded that the town's denial of Sprint's application was "arbitrary and capricious," but instead of ordering that the CUP be approved, Judge Farmer's order reversed the aldermen's first decision and remanded the matter to the board "for further proceedings in accordance with . . . judgment." We conclude that the aldermen *complied* with the court's judgment by holding "further proceedings," during which additional testimony and newspaper articles not previously considered by Judge Farmer were introduced. Because (1) the May 1995 consent judgment precluded a final ruling on Sprint's Motion to Compel approval based on evidence presented in the first hearing and (2) Judge Farmer never ruled on the sufficiency of the new evidence in support of the aldermen's second denial of Sprint's CUP application, we find no clear violation of Judge Farmer's order and uphold the trial court's dismissal of the Chapter 75 claims against the aldermen.

[2] As to the Chapter 75 unfair trade practices claim against the town, we held in *Rea Construction Co. v. City of Charlotte*, 121 N.C. App. 369, 465 S.E.2d 342, *disc. rev. denied*, 343 N.C. 309, 471 S.E.2d 75 (1996), that because the State is immune to Chapter 75 claims "regardless of whether sovereign immunity may exist," *Sperry Corp. v. Patterson*, 73 N.C. App. 123, 125, 325 S.E.2d 642, 644 (1985), and cities *and towns* are "agenc[ies] created by the State," *State v. Furio*, 267 N.C. 353, 356, 148 S.E.2d 275, 277 (1966) (emphasis added), "in accord with *Sperry*, . . . a city may not be sued under Chapter 75." *Rea Construction*, 121 N.C. App. at 370, 465 S.E.2d at 343 (emphasis added). Under *Rea Construction*, dismissal of the claim against the town was proper.

[3] We next decide whether the court properly dismissed Stephenson's claims of interference with contractual relations against the aldermen and the town.

Defendants first argue that Stephenson lacks standing to bring an interference with contract claim against either the town or the aldermen. Specifically, defendants argue that because Sprint, as a "mere optionee," lacked the requisite standing as an "affected" property owner to appeal the aldermen's first denial of its CUP application, Sprint's appeal to Wake County Superior Court was improvidently granted. *Humble Oil & Refining Co. v. Board of Aldermen of the Town of Chapel Hill*, 20 N.C. App. 675, 678, 202 S.E.2d 806, 809, *rev'd on other grounds*, 286 N.C. 10, 209 S.E.2d 447 (1974) (citing *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E.2d 128 (1946)). Defendants further argue that because Stephenson failed to file his own CUP application or appeal the aldermen's decision on Sprint's CUP application, he is precluded here from asserting "any claims he may have had regarding the denial of the conditional use permit." See G.S. § 160A-388(e) (providing for review of conditional use permitting decisions by any "aggrieved" party); *Lee*, 226 N.C. at 113, 37 S.E.2d at 133 ("a property owner whose property is affected by [a] proposed [zoning] change may seek review").

We note that Stephenson appears to concede the standing issue as to his claim against the aldermen when he states in his brief that "[i]f the defendants' mistreatment of Sprint had simply died without the Town of Garner usurping Stephenson's lease, it is debatable whether or not Stephenson would have had standing to seek damages for the loss of his lease income."

Even *assuming arguendo* that Stephenson does not concede the standing issue, we hold that when viewed in the light most favorable to the plaintiff, the facts support dismissal on grounds that the aldermen enjoyed legislative immunity to suit. *Vereen v. Holden*, 121 N.C. App. 779, 468 S.E.2d 471 (1996), *disc. rev. denied*, 347 N.C. 410, 494 S.E.2d 600 (1997). Officials may claim legislative immunity for action taken "in the sphere of legislative activity." See *Bogan v. Scott-Harris*, 523 U.S. 44, 140 L.Ed.2d 79 (1998). To prove legislative immunity, a public official must show that (1) he was acting in a legislative (non-ministerial) capacity at the time of the alleged incident and (2) his acts were not illegal. *Vereen*, 121 N.C. App. at 782, 468 S.E.2d at 473 (citing *Scott v. Greenville County*, 716 F.2d 1409, 1422 (4th Cir. 1983). *See also Bruce v. Riddle*, 631 F.2d 272 (4th Cir. 1980)).

The question of whether local officials' actions are "legislative" depends on the nature of their acts. *Scott* at 1423; *Bruce* at 277-80, citing *Lake Country Estates, Inc. v. Tahoe Regional Planning*, 440 U.S. 391, 59 L. Ed. 2d 401 (1979) ("to an extent that the evidence discloses

that [regional land use officials] were acting in a capacity comparable to that of members of a state legislature, they are entitled to absolute immunity"); *Butz v. Economou*, 438 U.S. 478, 57 L. Ed. 2d 895 (1978) (legislators, like judges, are entitled to absolute immunity "because of the special nature of their responsibilities"); *Tenny v. Brandhove*, 341 U.S. 367, 95 L. Ed. 1019 (1951) (reviewing the basis for conferring immunity on state legislators). While officials are not immune for acts outside the scope of their legislative duties, *Scott*, 716 F.2d at 1423, and arguably may claim only qualified immunity for "executive" acts (such as enforcement of zoning laws), *id.*, absolute immunity is available when officials, in the exercise of legitimate functions under state and local law, act in a "legislative capacity," *Pendleton Construction Corp. v. Rockbridge County*, 652 F.Supp 312, 323-24 (W.D. Va. 1987), *aff'd*, 837 F.2d 178 (4th Cir. 1988); *Bruce*, 632 F.2d at 279. So long as the acts are legislative in nature, immunity may extend to "vot[ing], . . . and . . . every other act resulting from the nature, and in the execution, of the office." *Bruce*, 631 F.2d at 280, citing *Tenny*, 341 U.S. at 374, 95 L. Ed. at 1025-26.

Stephenson argues that (1) conditional use permitting is a ministerial act and (2) "even if the first denial of Sprint's application was not ministerial," Judge Farmer's decision transformed the rehearing of Sprint's CUP application into a ministerial act of approval. We disagree.

Conditional use permitting is not, as plaintiff alleges, a ministerial process akin to "putting a square peg in a square hole." Ministerial acts are those in which "nothing is left to discretion." *Langley v. Taylor*, 245 N.C. 59, 62, 95 S.E.2d 115, 117 (1956); Black's Law Dictionary 1011 (7th ed. 1999). Under G.S. § 160A-381 (granting towns the power to adopt CUP ordinances), local zoning officials may not "deny applicants a permit in their *unguided* discretion or . . . refuse it solely because, in their view, [it] would 'adversely affect the public interest.' " *Triple E Assoc. v. Town of Matthews*, 105 N.C. App. 354, 361, 413 S.E.2d 305, 309, *disc. rev. denied*, 332 N.C. 150, 419 S.E.2d 578 (1992) (emphasis added). However, our courts have held that a town zoning board sits as a "trier of fact," *Ghidorzi Construction, Inc. v. Town of Chapel Hill*, 80 N.C. App. 438, 440, 342 S.E.2d 545, 547, *disc. rev. denied*, 317 N.C. 703, 347 S.E.2d 41 (1986), and is vested with "independent decision-making authority" to balance the petitioner's interest in subjecting his or her land to a particular use against his neighbors' interest in maintaining harmony of use throughout the community. *Chrismon v. Guilford County*, 322 N.C.

611, 635-36, 370 S.E.2d 579, 593-94 (1988) (authorizing conditional use permitting in North Carolina); *see also Alexander v. Holden*, 66 F.3d 62, 66 (4th Cir. 1995) ("[i]f the underlying facts 'relate to particular individuals or situations' and the decision impacts specific individuals or 'singles out specifiable individuals,' the decision is administrative. On the other hand, the action is legislative if the facts involve 'generalizations concerning a policy or state of affairs' and the 'establishment of a general policy' affecting the larger population"). Where the evidence pertaining to a CUP application reveals "two reasonably conflicting views," neither the Superior Court nor this Court may supplant the judgment of local zoning officials. *Ghidorzi*, 80 N.C. App. at 440, 342 S.E.2d at 547.

We conclude that conditional use permitting requires the exercise of substantial discretion on the part of local officials in deciding important community-wide land use policies, and is therefore legislative in nature. Moreover, since Judge Farmer's decision did not preclude the aldermen from holding "further hearings" or compel them to approve Sprint's petition, the decision neither changed the legislative nature of the aldermen's acts nor made them illegal. Because the aldermen may claim legislative immunity to suits arising out of their denial of Sprint's CUP petition, we hold that dismissal was proper as to the aldermen.

We note that defendants also contend that the trial court properly dismissed this claim as to the aldermen because plaintiff failed to comply with the requirement of specificity in pleading set out in *Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 724-25 (1998) (when officials are sued in their individual capacities, a statement of the capacity in which they are being sued must be included in the caption, the allegations, and the prayer for relief). Stephenson contends that because the opinion in *Mullis* was filed three days after their complaint, he was not bound by its holding. We disagree, because Stephenson could have cured any deficiency by amending his complaint. See *id.* ("[a]lthough the defense of immunity had been raised . . . plaintiffs did not attempt to amend their complaint to specify the capacity in which they were suing"). Moreover, in reviewing prior applicable law, the *Mullis* court noted that:

> The crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged. If the plaintiff seeks an injunction requiring the defendant to take an action

involving the exercise of a governmental power, the defendant is named in an official capacity. If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities."

*Id.* at 552, 495 S.E.2d at 723 (citing *Meyer v. Walls*, 347 N.C. 97, 110, 489 S.E.2d 880, 887 (1997)). After careful review of the record, we conclude that here the plaintiff seeks monetary damages only from the government *and* the aldermen acting in their official capacities. See *id.* at 554, 495 S.E.2d at 725. Accordingly, even if the trial court could not dismiss Stephenson's claim based on the lack of specificity in the pleadings, *Mullis* limits Stephenson to claims against the aldermen in their official capacities. We have already determined that the aldermen's official acts are protected by legislative immunity under *Vereen* and that dismissal was proper.

[4] We now consider whether the court properly dismissed the interference with contract claim against the town.

Unlike the claim against the aldermen, which is based on their denial of a CUP petition, Stephenson alleges that the town interfered with his contract rights by executing the Garner-Sprint Lease, thereby usurping his stream of income from the Stephenson-Sprint Lease. We first note that since execution of the Garner-Sprint Lease was not part of the CUP process, Stephenson has standing to bring this claim against the town. The remaining issues raised by the parties' briefs are (1) whether the Garner-Sprint Lease was legal; (2) whether plaintiff has stated a valid claim of interference with contract or prospective contract against the town, and if so, (3) whether the town may claim governmental immunity to Stephenson's suit. While we do not determine the legality of the Garner-Sprint Lease, we reverse the trial court's dismissal of Stephenson's claim of interference with prospective contract against the town.

Stephenson did not allege in his complaint that the Garner-Sprint Lease was illegal under G.S. § 160A-272. Because this issue was not addressed by the trial court and is not properly before us, we decline to address it. N.C. R. App. P. 10(b)(1).

To survive defendants' Rule 12(b)(6) and 12(c) motions, Stephenson's complaint must forecast that:

(1) a valid contract between the plaintiff and a third person . . . confer[red] upon the plaintiff a contractual right against a third person; (2) defendant kn[ew] of the contract; (3) the defendant intentionally induc[ed] the third person not to perform the contract; (4) and in doing so act[ed] without justification; (5) resulting in actual damage to the plaintiff.

*Embree Construction Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992). Defendants argue that on the face of the claim, Stephenson has failed to satisfy the first element of interference with contract.

We note that Stephenson alleges violation of two distinct contract rights: (1) the right to income under an option contract *in existence at the time the Garner-Sprint Lease was executed,* and (2) the right to *future* income under the Stephenson-Sprint Lease, *had the town eventually approved Sprint's CUP petition.* As to the former claim, defendants correctly argue that because the Stephenson-Sprint Lease was an option contract, Stephenson had no contract rights at the time the Garner-Sprint Lease was executed. *Rice v. Wood*, 82 N.C. App. 318, 328, 346 S.E.2d 205, 211, *disc. rev. denied*, 318 N.C. 417, 349 S.E.2d 599 (1986). Therefore, the first element of interference with contract was not met.

However, as to the latter claim, plaintiff's claim of interference with *prospective* contract survives where the evidence shows that defendants' interference "prevent[ed] the *making* of a contract . . . with design . . . [of] gaining some advantage at [plaintiff's] expense." *Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc.*, 330 N.C. 666, 680-81, 412 S.E.2d 636, 644-45 (1992) (overcoming summary judgment); *Coleman v. Whisnant*, 225 N.C. 494, 506, 35 S.E.2d 647, 656 (1945) (plaintiff overcame demurrer on evidence showing that "but for" defendants' interference, the contract *would have been* made). Here, Stephenson alleges in his complaint that "defendants' . . . usurpation of the stream of lease income . . . by the Garner Lease constitutes wrongful interference with . . . prospective contract." The evidence shows that the town executed the Garner-Sprint Lease prior to Sprint's argument of its Motion to Compel approval of its CUP application. The town argues that these facts show, at most, the town's desire to prevent further litigation regarding Sprint's CUP Application. We agree that this is a *possible* inference, but not the *only permissible* inference. Viewing the facts and all reasonable permissible inferences therefrom in the light most favorable to

Stephenson, it is also reasonable to infer that (1) the specter of protracted litigation presented the town with an opportunity to lease the top of its water tower to Sprint and (2) the execution of the Garner-Sprint Lease may have prompted Sprint's decision not to exercise its option under the Stephenson-Sprint Lease. In its brief, the town does not challenge whether Stephenson met the remaining elements of Stephenson' claim. Accordingly, we hold that Stephenson has sufficiently stated a claim for interference with prospective contract against the town.

In deciding whether a governmental entity may claim immunity from suit, we must first determine whether the nature of the complained-of act is proprietary or governmental. *Rich v. City of Goldsboro*, 282 N.C. 383, 385, 192 S.E.2d 824, 826 (1972); see generally, Morris and Daye, North Carolina Law of Torts, § 19.42.31-32. *Baucom's Nursery v. Mecklenburg County*, 89 N.C. App. 542, 366 S.E.2d 558, *disc. rev. denied*, 322 N.C. 834, 371 S.E.2d 274 (1988), cited by the town, is inapplicable because the execution of a lease, unlike the enactment and enforcement of zoning laws, is not an exercise of "police powers" delegated to the town by the State. *Id.* at 544, 366 S.E.2d at 560 (extending immunity to both the county and the board of commissioners). The better rule is found in *Lewis v. City of Washington*, 63 N.C. App. 552, 305 S.E.2d 752, *rev'd on other grounds*, 309 N.C. 818, 310 S.E.2d 610 (1983), in which we held that leasing property under G.S. § 160A-272, unlike zoning, is a proprietary activity. Pursuant to *Lewis*, we hold that the rule of governmental immunity does not bar Stephenson's claim against the town because the town's execution of a lease of town property was proprietary in nature.

In summary, we hold that the court properly dismissed Stephenson's Chapter 75 claims and his claim of interference with contract against the aldermen. We reverse the order of the trial court dismissing Stephenson's interference with contract claim against the town and remand the case for further proceedings in accordance with this decision.

Affirmed in part and reversed in part.

Judges JOHN and HUNTER concur.