No. 02–15189.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 2002.

Filed Jan. 14, 2003.

Laki KAAHUMANU; The Harvest Chapel Church of God; Sandra Barker; Double S Inc., dba A Romantic Maui Wedding, Plaintiffs–Appellees,

v.

COUNTY OF MAUI; J. Kalani English, Chair of Maui County Land Use Committee and Maui County Council Member; Patrick Kawano, Chair of Maui County Council; Dain Kane; Michael A. Davis; John Wayne Enriques; G. Riki Hokama; Dennis Nakamura; Wayne Nishiki; Charmaine Tavares, Maui County Council Members, Defendants–Appellants.

James H. Fosbinder and Rhonda M. Fosbinder, Fosbinder & Fosbinder, Kahului, HI, for the plaintiffs-appellees.

Victoria J. Takayesu, Deputy Corporation Counsel, Wailuku, Maui, HI, for the defendants-appellants.

Before: SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.

FISHER, Circuit Judge.

This case arises from the Maui County Council's denial of a conditional use permit that would have allowed plaintiffs-appellees ("plaintiffs") to conduct a commercial wedding business on beach-front residential property. Plaintiffs brought suit under 42 U.S.C.A. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc, against Maui County and members of the Maui County Council in their individual and official capacities after the Council voted not to grant the permit. The defendants-appellants ("defendants") moved to dismiss the claims against the Council members in their individual capacities, arguing that the individual-capacity claims were barred by legislative immunity. The district court denied the motion to dismiss the individual-capacity claims. The defendants now appeal the denial of legislative immunity.

## FACTUAL AND PROCEDURAL BACKGROUND

Maui may be to weddings in the first decade of this century what Reno was to divorces in the middle decades of the last.[1] As the Maui Visitor's Bureau puts it:

1. For evidence of Reno's status as divorce capitol of the United States, see The Women

"Paradise" is a word that takes on special meaning for couples planning to marry or honeymoon in Maui's Magic Isles. What better time for a magical sunset or moonlit walk on a tropical beach? What better setting than a tumbling waterfall framed by hillsides carpeted in exotic blooms and gorgeous green rainforest? Candle-lit dinners in a world class restaurant; snorkeling in an underwater garden; hiking the magnificent Haleakala Crater; the list of guaranteed memories goes on and on. Aloha from Maui Visitors Bureau, *Weddings/Honeymoons, at* http://www.visitmaui.com/index.html (last visited Jan. 6, 2002).

Plaintiff Sandra Barker runs a commercial wedding business, Double S Inc., under the trade name "A Romantic Maui Wedding." Plaintiff Laki Kaahumanu, Pastor of Harvest Chapel Church of God, conducts some of the ceremonies Barker arranges. In 1998, Barker began to arrange wedding ceremonies at her beachfront home. She also provided beach access through her property for wedding ceremonies on the public beach.

On September 3, 1998, Barker applied for a conditional use permit (CUP) so she could continue to use her beachfront property, which is located in a residential district, as a commercial wedding venue.[2] If the proposed use of Barker's property had fallen within one of the "special uses" listed in the Maui County Code (MCC), such as "[c]hurches together with accessory buildings," Barker could have applied to the Maui Planning Commission for a special use permit. MCC §§ 19.08.030, 19.510.070. A special use is one that "meets the intent and purpose of the zoning district but which requires the review and approval of the appropriate planning commission in order to ensure that any adverse impacts on adjacent uses, structures or public services and facilities which may be generated by the use can be, and are, mitigated." *Id.* § 19.04.040. The final authority to grant a special use permit rests with the Planning Commission. *Id.* § 19.510.070.

Because Barker's business did not fall within a designated special use, however, she had to apply for a conditional use permit, which can only be granted through the enactment of an ordinance by the Maui County Council. *Id.* § 19.40.070. A conditional use permit is intended for uses that are "similar, related or compatible to ... permitted uses and which ha[ve] some special impact or uniqueness such that [their] effect[s] on the surrounding environment cannot be determined in advance of the use being proposed for a particular location." *Id.* § 19.040.010. The Maui Planning Commission hears and reviews an application for a CUP and makes a recommendation to the Maui County Council. *Id.* § 19.40.020. The Council then enacts or declines to enact an ordinance approving the CUP. *Id.* § 19.40.070.

On June 17, 1999, after an administrative review of Barker's application, the Maui Planning Commission recommended to the Council that the CUP be approved. On October 20, 2000, a subcommittee of the Council, the Land Use Committee, held a two-hour public meeting at which some members of the public argued

---

(Hunt Stromberg 1939) (Wealthy Mary Haines, played by Norma Shearer, travels to Reno to secure a divorce from her husband after discovering his affair with shop attendant Crystal Allen, played by Joan Crawford.).

2. Barker's property is located in an A–1 apartment district. Commercial enterprises are neither expressly permitted nor designated as special uses in A–1 apartment districts and are therefore prohibited. Maui County Code (MCC) §§ 19.04.020(B), 19.08.030, 19.12.020.

against the permit. At the conclusion of the meeting, the Land Use Committee recommended denial of the permit. The Maui County Council voted to reject Barker's application that same day.

On November 24, 2000, Barker and Kaahumanu were cited for "continuing to conduct commercial weddings and other related activities" on the beachfront property and fined $1000.

### Procedural History

The plaintiffs filed suit for monetary, declaratory and injunctive relief against the Maui County Council and its members in their individual and official capacities under 42 U.S.C.A. § 1983 for violation of the First, Fifth and Fourteenth Amendments, and under RLUIPA, 42 U.S.C. § 2000cc.

The defendants moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims against the Council members in their individual and official capacities. They argued that the individual-capacity claims were barred by legislative immunity and that the official-capacity claims were duplicative of the claims against the County of Maui.

The district court denied the motion to dismiss the individual-capacity claims on the ground of legislative immunity but granted the motion to dismiss the official-capacity claims. The members of the Maui County Council, in their individual capacities, now appeal the district court's denial of legislative immunity.

### STANDARD OF REVIEW

■ We review de novo a district court's decision to grant or deny legislative immunity. *San Pedro Hotel v. City of Los Angeles,* 159 F.3d 470, 476 (9th Cir.1998).

### DISCUSSION

The Supreme Court has long held that state and regional legislators are absolutely immune from liability under § 1983 for their legislative acts. *See Tenney v. Brandhove,* 341 U.S. 367, 376–77, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (state legislators); *Lake Country Estates, Inc., v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 405, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (regional legislators). They are immune not for the sake of private indulgence, but so they may freely discharge their public duties as legislators. *Tenney,* 341 U.S. at 377, 71 S.Ct. 783. Thus, the immunity attaches only to actions taken "in the sphere of legitimate legislative activity." *Id.* at 376, 71 S.Ct. 783. In *Bogan v. Scott–Harris,* 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), the Supreme Court extended this immunity to local legislators, holding them "absolutely immune from suit under § 1983 for their legislative activities." [3]

■ We have recognized that "not all governmental acts by ... a local legislature[ ] are necessarily legislative in nature." *Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 580 (9th Cir.1984). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan,* 523 U.S. at 54, 118 S.Ct. 966. The question before us, then, is whether the actions of the Council members, when "stripped of all considerations of intent and motive," were legislative rather than administrative or executive. *Id.* at 55, 118 S.Ct. 966.

■ "The Supreme Court 'has generally been quite sparing in its recognition of claims to absolute official immunity.'" *Chateaubriand v. Gaspard,* 97 F.3d 1218,

---

**3.** Because we ultimately conclude that the Council members' action was administrative rather than legislative, and thus not entitled to legislative immunity, we need not reach the question whether legislative immunity extends to suits brought under 42 U.S.C. § 2000cc. The parties did not address this question in their briefs or at oral argument.

1220 (9th Cir.1996) (quoting *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). "The burden of proof in establishing absolute immunity is on the individual asserting it." *Trevino v. Gates,* 23 F.3d 1480, 1482 (9th Cir.1994).

 We determine whether an action is legislative by considering four factors: (1) "whether the act involves ad hoc decisionmaking, or the formulation of policy"; (2) "whether the act applies to a few individuals, or to the public at large"; (3) "whether the act is formally legislative in character"; and (4) "whether it bears all the hallmarks of traditional legislation." *Bechard v. Rappold,* 287 F.3d 827, 829 (9th Cir.2002) (quoting *San Pedro Hotel,* 159 F.3d at 476, and *Bogan,* 523 U.S. at 55, 118 S.Ct. 966) (internal quotation marks omitted). We consider each factor in turn, but recognize that they are not mutually exclusive.[4]

*(1) Ad hoc decision making:* The defendants argue that a decision to grant or deny a conditional use permit is an act of public policy rather than an ad hoc decision because it involves the exercise of considerable discretion. They argue that because a CUP authorizes a use that would otherwise be prohibited under the existing comprehensive zoning ordinance, a CUP therefore temporarily modifies and supersedes the policies contained in that ordinance. The plaintiffs respond that such decisions are made on a case-by-case basis, and that as a practical matter, the consequences of each individual permit do not alter the underlying legislative policy.

 The district court rightly concluded that the Council's decision was ad hoc. The decision was taken based on the circumstances of the particular case and did not effectuate policy or create a binding

rule of conduct. Typically, a zoning ordinance establishes a rule of general application, but here the ordinance would have affected only a single permit and a single parcel of land. As the district court noted, "regardless of whether the County Council voted to deny or grant Plaintiffs' CUP, those seeking to conduct businesses similar to Plaintiffs' wedding operation would be required ·to obtain their own CUP in accordance with the provisions of the Maui County Code." Enactment of the ordinance would not have created a new category of expressly permitted or special uses and therefore did not modify or supersede the policies contained in the existing comprehensive zoning ordinance.

The defendants rely on *Kuzinich v. County of Santa Clara,* 689 F.2d 1345 (9th Cir.1982), to no avail. That case dealt with an emergency amendment to a county zoning ordinance that had the effect of making the operation of plaintiff's two adult businesses unlawful. *Id.* at 1347. Although the ordinance may have had an immediate practical effect on only two parcels of land, by its terms the ordinance applied to all parcels within the covered area. *Id.* at 1348. We held that "the enactment of a general zoning ordinance is a legislative act" and consequently granted legislative immunity. *Id.* at 1349. The present case is easily distinguishable. An ordinance granting a CUP is not a "general zoning ordinance." It affects only the parcel of land that is the subject of the application and has no further force or effect. *See Haskell v. Washington Township,* 864 F.2d 1266, 1278 (6th Cir.1988) (holding that "[i]f ... the [zoning] action single[s] out specifiable individuals and affect[s] them differently from others, it is administrative") (internal quotation marks and citations omitted).

---

4. Whether an act is ad hoc can depend on whether it is aimed at a few people or many, and whether an act bears all the hallmarks of traditional legislation can depend on whether it is ad hoc. *See Bechard,* 287 F.3d at 829–32.

We agree. with the district court that granting or denying a CUP constitutes ad hoc administration of the existing· zoning ordinance rather than the formulation of policy. As the district court observed: "The County of Maui's zoning policy is reflected in the Maui County Code, and as the Code provides a mechanism to 'establish uses not specifically permitted within a given use zone' through obtainment of a CUP, the decision to grant or deny a CUP constitutes administration of the Code." (quoting MCC § 19.40.010). In other words, the Council is carrying out, not changing, the policies embodied in· the comprehensive zoning ordinance when it grants or denies a CUP.

The defendants argue that the Council's decision to grant or deny a CUP is not ad hoc by contrasting the Council's discretion under the Code with the specific guidelines the Planning Commission must follow in deciding whether to recommend that the Council grant a CUP. Although the Code does provide more specific guidelines to the Planning Commission,[5] the Code does not give the Council complete discretion. The Code defines the intent of a CUP as providing "the opportunity to consider establishing uses not specifically permitted within a given use zone where the proposed use is *similar, related or compatible to those permitted uses.*" MCC § 19.40.010 (emphasis added). This stated intent applies to and guides both the Planning Commission and the Council in carrying out their respective duties. The Council is also guided by the general purpose and intent of the comprehensive zoning ordinance, as laid out in MCC § 19.04.015. Although the Council undoubtedly retains

considerable discretion, the exercise of such discretion does not convert the Council's action from an administrative or executive decision to a legislative one. *See Barbaccia v. County of Santa. Clara,* 451 F.Supp. 260, 267 (N.D.Cal.1978) (holding that city council·members were not legislatively immune from suit for rejecting plaintiff's development plan because their acts involved ·"discretionary determinations with respect to a single parcel of land"). *But see Stephenson v. Town of Garner,* 136 N.C.App. 444, 524 S.E.2d 608, 613 (2000) (holding that a decision to grant a CUP "requires the exercise of substantial discretion on the part of local officials in deciding important community-wide land use policies, and is therefore legislative in nature").

■■■■ Defendants also argue that the Council's action was not ad hoc by contrasting the procedures for granting conditional and special use permits. The defendants argue that the granting of a special use permit by the Maui Planning Commission is ·administrative because there· has been a prior legislative determination that the special uses listed in the Code meet the intent and purpose of the various zoning districts. They argue that in the case of a conditional use permit, there has been no such prior legislative determination. Instead, they claim, the authority to grant a conditional use· permit has been specifically retained by the County's legislative body, the County Council, because the granting of a conditional use permit ultimately involves the reformulation and enactment of zoning policy in derogation of the County's comprehensive zoning ordinance. We cannot accept this professed

---

**5.** The Code directs the Planning Commission to recommend approval of a CUP only if the proposed use will not be "significantly detrimental to the public interest, convenience and welfare, and will be in harmony with the area in which it is to be located." MCC § 19.40.070. The Code also directs the Planning Commission to recommend denial of a CUP if it "is for a use which is substantially different from those uses permitted in the use zone." *Id.*

distinction. The mere fact that the Council has retained the authority to grant conditional use permits does not necessarily imply that granting conditional use permits involves policy-making. The Council's decision to grant or deny a CUP is not a derogation from the comprehensive zoning ordinance; rather, it is an individualized determination that the proposed use is "similar, related or compatible to ... permitted uses." MCC § 19.40.010. Furthermore, the Code itself seems to distinguish between a conditional use permit and an actual "change of zoning." *Id.* § 19.40.070 (providing that the Maui Planning Commission shall recommend denial of a CUP for "a use which is substantially different from those uses permitted in the use zone," and "may instruct the applicant to seek a *change of zoning* should the facts warrant such an application") (emphasis added).[6]

(2) *Whether the act applies to a few individuals or the public at large:* When the act in question applies to a few individuals rather than the public at large, legislative immunity is disfavored. *See San Pedro Hotel,* 159 F.3d at 476 (holding that a city council member was entitled to immunity because his decision to vote for or against a publicly financed loan "involved the formation of policy applied to the public at large"); *Trevino,* 23 F.3d at 1482 (holding that city council members' determinations whether to pay punitive dam-

ages awards under a state statute are non-legislative in nature in part because they "shield[ ] individuals from specific damages awards" and thus do not apply to the community at large); *Bateson v. Geisse,* 857 F.2d 1300, 1304 (9th Cir.1988) (denying immunity to city council members for their decision to reject plaintiff's building permit because the decision "was directed specifically and solely at a single individual" and did not "appl[y] to the general community"). We have also recognized, however, that while this factor "may at times be useful, it does not always provide an answer to the question" whether an act is legislative. *Cinevision Corp.,* 745 F.2d at 579 ("Congress, as well as many state and local legislatures, may enact private, or other, bills that affect an individual or a narrowly defined group of individuals. We cannot say that such activities are not legislative.").

▮ A decision to enact or reject an ordinance granting a CUP is made on a case-by-case basis and does not apply to the public at large in Maui County. It is therefore distinguishable from the enactment of a comprehensive zoning ordinance. We do not hold, however, that anything short of a comprehensive zoning ordinance is administrative rather than legislative. The question here is one of degree, and we conclude simply that the very limited impact of the conditional use permit at issue here weighs against absolute immunity.[7]

---

**6.** We also reject as immaterial the defendants' argument that the decision to grant a CUP is not ad hoc because it runs with the land. As the defendants concede, the decision to grant a special use permit also runs with the land, but is administrative.

**7.** The defendants rely on three cases from other federal courts of appeals for the proposition that a zoning ordinance affecting only one parcel of land is nonetheless legitimately legislative: *Biblia Abierta v. Banks,* 129 F.3d 899 (7th Cir.1997); *Acierno v. Cloutier,* 40 F.3d 597 (3d Cir.1994); and *Corn v. City of*

*Lauderdale Lakes,* 997 F.2d 1369 (11th Cir. 1993). All three are distinguishable on their facts. *Biblia Abierta,* like the *Kuzinich* case discussed *supra,* involved an ordinance that initially affected only two parcels of land, but which by its terms applied equally "to all current and future owners of the property" in the affected district. *Biblia Abierta,* 129 F.3d at 904. The CUP in the present case by its terms would have applied only to Barker's parcel.

In *Acierno,* the members of the county council down-zoned the plaintiff's 38–acre

The defendants also argue that the grant of a CUP in this case would have far-reaching prospective implications because the Council would be hard pressed to deny a CUP to the next individual from the same neighborhood who applied for one. Although it may be true that granting one application for a CUP makes it politically difficult for the Council to deny a similar application from someone else, the grant has no legal effect on subsequent Council decisions.

■ *(3) Whether the act is formally legislative in character:* The defendants rest their argument for absolute immunity in part on the formally legislative character of their decision. Their "acts of voting . . . were, in form, quintessentially legislative." *Bogan,* 523 U.S. at 55, 118 S.Ct. 966. While this fact weighs in favor of legislative immunity, it does not in itself decide the issue. In *Bogan,* the Supreme Court did not reach the question "whether the formally legislative character of petitioners' actions is alone sufficient to entitle petitioners to legislative immunity, because here the ordinance, in substance, bore all the hallmarks of traditional legislation." *Id.* We, however, reached the question in *Cinevision Corp.* Under *Cinevision,* we must look beyond the formal character of the act to see whether it " 'contain[s] matter which is properly to be regarded as legislative in its character and effect.' " 745 F.2d at 580 (quoting *INS v. Chadha,* 462 U.S. 919, 952, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983)).

■ *(4) Whether the act bears all the hallmarks of traditional legislation:* In *Bogan,* the plaintiff alleged that her discharge, accomplished through an ordinance eliminating the city's health department (of which she was the sole employee), was motivated by racial animus and retaliation for filing a complaint against another employee. *Bogan,* 523 U.S. at 47, 118 S.Ct. 966. The Supreme Court concluded that absolute immunity applied because the ordinance "bore all the hallmarks of traditional legislation." *Id.* at 55, 118 S.Ct. 966. The Court reasoned that the ordinance "reflected a discretionary, policy-making decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55–56, 118 S.Ct. 966. The Court also found that because the ordinance eliminated a position rather than a particular employee, it "may have prospective implications that reach well beyond the particular occupant of the office." *Id.* at 56, 118 S.Ct. 966. As explained above, the Maui County Council's decision not to grant the CUP was ad hoc rather than one of policy. In denying a single application for a CUP, the Council did not change Maui's compre-

---

property through two ordinances that applied to the plaintiff's property alone. *Acierno,* 40 F.3d at 612. The Third Circuit held that the act of down-zoning was a broad policy decision because the development plan for the parcel called for 322 apartment units and some commercial use, and raised concerns about traffic and compliance with wetlands, public works and fire prevention regulations. *Id.* at 613. The present case involves a much smaller parcel and does not raise public policy concerns of the same type or magnitude.

In *Corn,* the city council enacted an ordinance down-zoning an 8.5–acre parcel to a more restrictive business classification. *Corn,* 997 F.2d at 1371. The Eleventh Circuit held that the city council members were immune from suit in enacting the ordinance because "even . . . decision[s] about which zoning classification should be applied to a specific parcel of land[ ] are legislative actions." *Id.* at 1392. The present case is distinguishable because it does not involve rezoning or an application for rezoning. The CUP would not have rezoned the property for commercial use; it would have permitted the plaintiffs to conduct commercial wedding activities under specific conditions. As noted above, the Code itself distinguishes between a CUP and an actual "change of zoning." MCC § 19.40.070.

hensive zoning ordinance or the policies underlying it, nor did it affect the County's budgetary priorities or the services the County provides to residents.

## CONCLUSION

 The Maui County Council's decision to deny the CUP was ad hoc, affected only the plaintiffs and did not bear all the hallmarks of traditional legislation. Despite its formally legislative character, the decision was administrative and the individual members of the Maui County Council are therefore not entitled to legislative immunity.[8]

**AFFIRMED.**

---

8. We have no occasion to address whether the doctrine of qualified immunity applies in this case, nor do we opine on the merits of plaintiffs' claims.