Argued and submitted May 14, affirmed June 16, petitioners' petition for reconsideration filed July 21 allowed by opinion September 22, 1993
See 123 Or App 300, 859 P2d 574 (1993)

Patricia LARSON
and Kenneth Larson,
*Petitioners,*

*v.*

MULTNOMAH COUNTY,
Donna Matrazzo, Stuart Sandler, Melissa Marsland,
Mark Valeske, Julie Valeske, Jerome Degraaf,
Jack Sanders, Sauvie Island Conservancy and
Friends of Retaining Channel Environment,
*Respondents.*

(LUBA No. 92-100; CA A79157)

854 P2d 476

David B. Smith, Tigard, argued the cause for petitioners. With him on the brief was Dorothy S. Cofield, Tigard.

John L. DuBay, Chief Assistant County Counsel, Portland, argued the cause for respondent Multnomah County.

With him on the brief was Laurence Kressel, County Counsel, Portland.

No appearance for respondents Donna Matrazzo, Stuart Sandler, Melissa Marsland, Mark Valeske, Julie Valeske, Jerome Degraaf, Jack Sanders, Sauvie Island Conservancy and Friends of Retaining Channel Environment.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioners seek review of LUBA's decision affirming Multnomah County's denial of their application to develop a marina on a 21-acre parcel in an exclusive farm use zone. Although the application included several components, among them a comprehensive plan amendment, a zone change and a Goal 3 exception request, all were part of and necessary to the application for the marina use.

Petitioners' contention before LUBA was that the denial of the application deprived them of "all economically beneficial use," and therefore constituted a regulatory taking, in violation of the state and federal constitutions. Petitioners requested an evidentiary hearing before LUBA, pursuant to ORS 197.830(13)(b), to establish that their parcel cannot be "economically used" for any of the uses permitted outright or conditionally in the EFU zone.

LUBA's reasons for denying the requested evidentiary hearing and for its decision of the appeal were twofold: first, petitioners had not raised the takings issue in the local proceeding and, under ORS 197.763 and ORS 197.835(2), LUBA could not reach it; and second, because, *inter alia*, petitioner had not applied to the county for any use or approval except for the marina, the takings claim was not ripe for review.

Petitioners argue that both the denial of their request for an evidentiary hearing and LUBA's affirmance of the county's decision were erroneous. They contend that LUBA's conclusions on both the preservation and the ripeness issues were incorrect. They also argue that the denial of the evidentiary hearing by LUBA deprived them of due process.

■    LUBA's conclusions on preservation and on ripeness are stated as alternative grounds for the same result. Because we agree with LUBA on the ripeness issue, it is unnecessary for us to reach the preservation issue, and we expressly do not. The ripeness issue and the questions petitioners raise concerning their entitlement to an evidentiary hearing by LUBA are also intertwined. Petitioners' view is that they were entitled to prove to LUBA that it would be futile for them to apply to the county for anything other than the

marina use, and they are therefore not required by the ripeness doctrine to make further applications to the county before seeking an adjudication of their regulatory takings claim. The county responds, in effect, that petitioners have the cart before the horse: Their claim cannot ripen until they seek and the county takes action on some application other than the one for the marina use, and LUBA correctly ruled that it could not review the takings claim or take evidence regarding it until that occurs.

In *Joyce v. Multnomah County*, 114 Or App 244, 835 P2d 127 (1992), we reviewed the currently relevant Oregon Supreme Court and United States Supreme Court decisions on the ripeness, or exhaustion of remedies, requirement that must be satisfied before regulatory takings claims under either constitution can become judicially cognizable. The rule that we derived from the two courts' opinions is that a claim is not ripe for adjudication if a landowner has simply "unsuccessfully filed one application for the approval of a particular use and has pursued no alternative approaches to achieve permission for that or any other use." 114 Or App at 247. (Footnote omitted.)[1]

Similarly, in *Dority v. Clackamas County*, 115 Or App 449, 839 P2d 1103 (1992), *rev den* 315 Or 311 (1993), we held that, under Article I, section 18, of the state constitution, a landowner could not satisfy the ripeness requirement simply by pointing to the unavailability of a particular procedure for obtaining permission to conduct a use that had been initially denied, as long as at least one other local application procedure for the same or another economically viable use remained available and none had been pursued.

We further concluded, in *Joyce* and *Dority*, that arguments based on the futility exception to the ripeness rule should seldom be entertained and should not ever be considered if they amount to nothing more than predictions about the success of applications to the local governments. The underpinning for our conclusion was that the court should

---

[1] We found it unnecessary to decide whether a less restrictive ripeness test applies under the Fifth Amendment than under the Oregon Constitution. The "one alternative" test, which is the most minimal one that *could* apply under the federal or state cases, was sufficient to decide the ripeness question in *Joyce*, as it also is here. *See* note 2, *infra*.

not use the futility rationale as a device for making decisions about the permissibility of uses that are for other branches or levels of government to make initially. *See* 114 Or App at 248; *see also MacDonald, Sommer & Frates v. Yolo County,* 477 US 340, 352 n 8, 106 S Ct 2561, 91 L Ed 2d 285 (1986).[2]

■ Petitioners attempt in a number of ways to distinguish this case from *Joyce, Dority* and the cases on which we relied in those decisions. They contend, first, that the futility argument that they advanced to LUBA, unlike the one in *Joyce*, was not that no possible alternative uses would be allowed by the county, but that no uses that could be permitted in the EFU zone would be economically viable. Assuming without deciding the correctness of their premise, petitioners may not depend solely on uses in the EFU zone unless they have sought a zone change or plan redesignation that might allow more extensive uses. Although we do not now decide whether a plan or zoning amendment must invariably be sought to achieve ripeness, we do hold that at least one application must be made after the initial denial, if any is available, and that a plan or zone change must be sought if only it is available. *See* note 1, *supra.*

Petitioners argue that they *did* seek a plan amendment and zone change as part of their application for the marina. However, as the county correctly points out, those requests were "denied as part of the package to permit a marina. * * * This does not mean that other projects, less ambitious but economically feasible, are not possible on petitioners' property under the county's land use regulations." In sum, we do not agree with petitioners that they come to us

---

[2] Our ripeness/exhaustion analysis in *Joyce* and *Dority* was governed, for purposes of the Oregon Constitution, by *Suess Builders v. City of Beaverton,* 294 Or 254, 656 P2d 306 (1982), and *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978). Those opinions also apply, in terms, to regulatory takings claims under the Fifth Amendment, and we are bound by them in that respect as well, as long as they are not contrary to United States Supreme Court opinions on the subject. The reason that we have focused our discussion on our recent decisions in *Joyce* and *Dority*, rather than on *Suess Builders* and *Fifth Avenue*, is that our cases discuss United States Supreme Court authority that post-dates the two Oregon Supreme Court cases and that contains language to suggest that the Fifth Amendment test for ripeness is somewhat less preclusive than the two Oregon cases may suggest. However, as indicated in note 1, *supra*, whatever difference there may be between the standards articulated by the two courts, the test that suffices to resolve the ripeness question under the facts of this case is consistent with the least preclusive possible reading of the United States Supreme Court's opinions.

in a different posture from the petitioners in *Dority* and *Joyce*: They have made one application, and they point to no tenable reason why it would be futile for them to make others.

For the same reason, petitioners' attempt to distinguish *MacDonald, Sommer & Frates v. Yolo County, supra*, does not succeed. What we said in *Joyce* concerning the petitioner's argument based on *MacDonald* is equally applicable here: "[P]etitioner stands in precisely the same position as the applicant in *MacDonald, Sommer & Frates*: He has unsuccessfully filed one application for the approval of a particular use and has pursued no alternative approaches to achieve permission for that or any other use." 114 Or App at 247. (Footnote omitted.)

The futility issue that petitioners seek to raise in this case differs from the one addressed in *Joyce*, 114 Or App at 248, and from the one referred to in *MacDonald*, 477 US at 352 n 8, in that petitioners contend that none of the possible alternative uses would be economically beneficial, rather than that none of the uses would be permitted by the county. That distinction does not change the analysis, and it does not benefit petitioners. Before the absence of possible economic benefit from any alternative uses can be demonstrated, it is first necessary to identify what the possible alternative uses are. Petitioners have not done so. As noted above, they have simply posited that only uses in the EFU zone need be considered. We have no basis for accepting their attempt to narrow the inquiry in that way, because they have not applied for a plan designation or zone change, independently of the single use—a marina—for which they have applied so far.

LUBA did not err in holding that petitioners' claim was not ripe. It follows that the denial of the evidentiary hearing did not result in a denial of due process. No adjudicative process is required on a claim that is not ripe for adjudication.

Affirmed.