**THUNDERBIRD HOTELS, LLC,**
**an Oregon limited liability**
**corporation, Plaintiff,**

v.

**CITY OF PORTLAND, a municipal corporation, and Sam Adams, in his official capacity as a Commissioner of the City of Portland, Defendants.**

**No. CV 08–1385–JE.**

United States District Court,
D. Oregon.

Nov. 5, 2009.

See also 218 Or.App. 548, 180 P.3d 87.

Donald R. Stark, John R. Dudrey, Michael D. Williams, Williams Fredrickson, LLC, Portland, OR, for Plaintiff.

Terence L. Thatcher, Tracy Pool Reeve, City Attorney's Office, Portland, OR, for Defendants.

## OPINION & ORDER

MOSMAN, District Judge.

On September 30, 2009, Magistrate Judge Jelderks issued Findings and Recommendation ("F & R") (# 47) in the above-captioned case recommending that I GRANT defendants' Motion for Summary Judgment (# 10). He recommended that I dismiss the claims against the City of Portland without prejudice and dismiss the claims against Mr. Adams with prejudice. Plaintiff filed Objections (# 49) to the F & R and defendants responded (# 50) to those objections.

## DISCUSSION

Plaintiff Thunderbird Hotels, LLC ("Thunderbird") objected to three different portions of the F & R. First, Thunderbird contends that Judge Jelderks ruled erroneously on two different nondispositive motions. Second, it alleges that the F & R included several improperly made factual findings. Finally, Thunderbird objects to two of Judge Jelderks's legal conclusions.

## I. *Review of Nondispositive Motions*

 Parties may timely file objections to a magistrate's order for nondispositive, pretrial matters. Fed.R.Civ.P. 72(a). On review of the magistrate's order, the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). There is clear error when the court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). This standard of review reflects the broad discretion accorded to magistrate judges on pretrial matters. *See, e.g., Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002) (stating that questions of law are reviewed de novo, while pretrial motions—such as discovery matters—are evaluated under the clearly erroneous standard of review) (citations omitted).

Thunderbird renewed its Motion to Compel (# 19) as part of its Response to defendants' Motion for Summary Judgment. (*See* Pl.'s Resp. (# 26) 1.) Thunderbird also sought leave to obtain a discovery deposition under Rule 56(f). (*Id.*) Judge Jelderks did not specifically rule on these motions in his F & R, likely based on his finding that Thunderbird's claims against the City of Portland are not yet ripe for review. Because I decline to vacate the F & R, as described below, and find that the documents and deposition sought by Thunderbird would not change the outcome of the ripeness finding, I DENY plaintiff's renewed Motion to Compel and Motion for Leave to Take Discovery Deposition.

## II. *Review of Factual Findings and Legal Conclusions*

 With respect to dispositive motions, the magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination.

The court is generally required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F & R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003). While the level of scrutiny under which I am required to review the F & R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any of the magistrate judge's F & R. 28 U.S.C. § 636(b)(1)(C).

In their Motion for Summary Judgment, defendants Mr. Adams and the City of Portland argued that: (1) Mr. Adams is not a proper party; (2) Thunderbird's claims are not ripe; (3) the City of Portland is not a proper defendant to claims based on the Columbia River Bridge Draft Environmental Impact Statement; (4) Thunderbird's equal protection claim fails on the merits; (5) Thunderbird's substantive due process claim fails on the merits; and (6) Thunderbird's takings claim fails on the merits. (F & R(# 47) 11–12.)

Judge Jelderks analyzed each of the claims in the light most favorable to Thunderbird. (*Id.* at 11.) Judge Jelderks first found that Mr. Adam's conduct "in voting to enact and extend the development moratorium ... was 'legislative' in nature, and subject to absolute immunity." (*Id.* at 13.) He also found that Thunderbird's federal due process and equal protection claims were not ripe for review, and declined to discuss the merits of either claim. (*Id.* at 19, 22.) Additionally, he found that both of Thunderbird's takings claims, under state and federal law, were not ripe for

review. Upon review, I agree with Judge Jelderks's recommendation. I adopt the F & R(# 47) as my own opinion, and will address Thunderbird's objections to both factual findings and conclusions of law in the following analysis.

## A. *Findings of Fact*

Thunderbird contends that the F & R included "improperly made findings with respect to material and disputed matters of fact...." (Pl.'s Objections (# 49) 2.) Specifically, Thunderbird cites the following as improper: (1) "[the court's] finding concerning the June 2002 'recommendations' of the Bi–State I–5 Transportation and Trade Partnership Task Force for improvements of the I–5 freeway, including the I–5 bridge"; (2) "[the court's] finding regarding the applicability of discretionary land use review procedures to Thunderbird's property"; (3) "[the court's] finding that defendant City of Portland's planning process for adoption of the Hayden Island Plan ... began in 'early 2007'"; and (4) "[the court's] finding, to the extent the issue is factual, that Thunderbird's takings claim under [state law] is not ripe." (*Id.*)

Thunderbird makes its first two factual objections based, in part, on "apparent" "inference[s]" or "implication[s]" in the F & R. (*See* Pl.'s Objections (# 49) 6–8 ("The point of the Court's finding appears to be that Thunderbird ought to have known better...."; "The Court, again, appears to have improperly drawn an inference against Thunderbird ...."; "the apparent implication of the Court's finding....").) I decline to read these negative inferences into Judge Jelderks's language.

Furthermore, the absence of the first three factual findings to which Thunderbird objects would not actually change the outcome of Judge Jelderks's recommendation regarding ripeness. The fourth factual objection more appropriately goes to the

legal conclusion that Thunderbird's takings claim under Oregon law is not ripe. Even assuming the truth of the specific facts listed by Thunderbird in this fourth factual objection, the central fact remains that Thunderbird failed to make a meaningful development application to the city, rendering its claim unripe for review.

## B. *Conclusions of Law*

Thunderbird objects to Judge Jelderks's legal conclusions regarding both its takings claims under both state and federal law. I will discuss each in turn.

### 1. Oregon Takings Claim

■ Thunderbird's primary protest is Judge Jelderks's refusal to apply the futility exception to its takings claim under Oregon law. (*See* Pl.'s Objections (# 49) 10 ("The Court's error lies in its rigid application of ... the 'one application' 'rule' ").) Thunderbird cites two Oregon Court of Appeals cases that recognize application of the futility exception when there exists little or no chance that the applicant could obtain permission or approval for development. (*Id.* at 10–11 (citing *Boise Cascade Corp. v. Bd. of Forestry*, 186 Or.App. 291, 63 P.3d 598 (2003); *Larson v. Multnomah County*, 121 Or.App. 119, 854 P.2d 476, *adhering to previous opinion*, 123 Or.App. 300, 859 P.2d 574 (1993)).)

Thunderbird's continued argument that *Larson* and *Boise Cascade* counsel application of the futility exception under the present circumstances is misplaced. As Judge Jelderks discussed in the F & R, neither of those cases excuses an *initial* application for development. (*See* F & R (# 47) 20–21.) Rather, both cases discuss application of the futility exception when *further* applications or amendments would prove futile.

In *Larson*, the opening sentence of the first opinion demonstrates this key difference: "Petitioners seek review of LUBA's decision affirming Multnomah County's denial of their application to develop a marina...." 854 P.2d at 477. The petitioners in *Larson* argued that "the *denial of the application* deprived them of 'all economically beneficial use.' " *Id.* (emphasis added). The Oregon Court of Appeals described the policy behind the limited application of the futility exception:

> [A]rguments based on the futility exception to the ripeness rule should seldom be entertained and should not ever be considered if they amount to nothing more than predictions about the success of applications to the local governments. The underpinning for our conclusions [in *Joyce v. Multnomah County*, 114 Or. App. 244, 835 P.2d 127 (1992) and *Dority v. Clackamas County*, 115 Or.App. 449, 838 P.2d 1103 (1992) ] was that the court should not use the futility rationale as a device for making decisions about the permissibility of uses that are for other branches or levels of government to make initially.

*Larson*, 854 P.2d at 478 (citations omitted). *Boise Cascade* similarly involved an initial application, and the parties subsequently argued whether *further* application would have proved futile. 63 P.3d at 600 ("the board denied Boise's plan to harvest timber ... [so] Boise initiated this action for inverse condemnation"); *id.* at 605 ("we conclude that ... the 'futility' exception will not apply unless the party claiming futility can show that there was very little likelihood ... that the development would have been approved had that party taken *further* steps to obtain approval.") (emphasis added).

Thunderbird focuses its objection on the alleged futility of an application for a zone change or plan amendment, but this argument continues to miss the threshold point that Oregon law requires Thunderbird to

seek an initial application for development, at a minimum. (*See* Pl.'s Resp. (# 49) 11 ("the situation ... would not have been remedied by applying for a zone change or a plan amendment"); *see also Larson,* 854 P.2d at 478–79 ("Although we do not now decide whether a plan or zoning amendment must invariably be sought to achieve ripeness, we do hold that at least one application must be made after the initial denial....").) I therefore follow Judge Jelderks's recommendation in finding that Thunderbird's state law takings claim is not ripe for review.

### 2. Federal Takings Claim

■ In its objection to Judge Jelderks's finding that the federal takings claim is not ripe, Thunderbird cites to a recently decided Ninth Circuit opinion emphasizing the prudential nature of the federal ripeness requirement. (Pl.'s Objections (# 49) 12 (citing *Guggenheim v. City of Goleta,* 582 F.3d 996 (9th Cir.2009)).) Because that opinion was issued only two days prior to Judge Jelderks's F & R and discussed for the first time in Thunderbird's Objections, I take it up briefly here.

Thunderbird's argues that this court would be prudent to stay, rather than dismiss, the federal takings claim. (Pl.'s Objections (# 49) 13.) This argument extends from the assertion that Thunderbird's state takings claim is ripe as a matter of Oregon law. (*Id.*) Because I agree with Judge Jelderks that Thunderbird's state law takings claim is not ripe, I do not find this argument persuasive. Additionally, *Guggenheim* presents a factual and procedural posture that is simply not analogous to the present case. There, the defendant city "forfeited its claim that the case was not ripe for decision" and the parties had already "litigated and settled several state law issues relevant to the alleged taking" in state court, persuading the Ninth Circuit to reach the merits of the takings claim.

*Guggenheim,* 582 F.3d at 1011–12. Because this case does not present facts to support a similar analysis, I follow Judge Jelderks's recommendation in finding that Thunderbird's federal law takings claim is not ripe for review, nor should it be stayed.

### CONCLUSION

Accordingly, I ADOPT Judge Jelderks's F & R(# 47) as my own opinion. Plaintiff's claims against the City of Portland are dismissed without prejudice and its claims against Mr. Adams are dismissed with prejudice.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

JELDERKS, United States Magistrate Judge.

Plaintiff Thunderbird Hotels, LLC (Thunderbird) brings this action alleging that defendants Sam Adams and the City of Portland improperly appropriated its real property in violation of state and federal law. Defendants move for summary judgment. The motion should be granted.

### FACTUAL BACKGROUND

On June 19, 2002, the Bi–State Transportation and Trade Partnership Task Force released its recommendations concerning potential improvements in an area including the I–5 Bridge between Portland, Oregon, and Vancouver, Washington. The Task Force concluded that the existing I–5 Bridge should be replaced or substantially upgraded.

In December, 2004, plaintiff Thunderbird purchased the Double Tree Hotel site (hotel site), a 13–acre property on the north shore of Hayden Island, for more than $20,000,000. Hayden Island, the northernmost neighborhood in Portland, Oregon, is situated between the mainland

of Oregon and Washington. Interstate 5, which is immediately east of the hotel site, provides the only road access to Hayden Island.

Thunderbird purchased the hotel site with the expectation of redeveloping the property for retail use. It shut down hotel operations at the site in May, 2005, and planned to anchor the redevelopment project with a large-format, or "Big Box" retailer.

Under the Portland City zoning code, the hotel site is zoned General Commercial, or "CG." Under that classification, retail uses are allowed as a matter of right if a development complies with specified "development standards."

In order to redevelop the hotel site, Thunderbird would need to obtain demolition permits and a comprehensive building permit. Building permit applications typically include site plans, elevation drawings, and construction details describing a proposal and explaining how applicable development standards are satisfied. Redevelopment applications are submitted to the Bureau of Development Services and other City Bureaus to determine whether applicable standards and rules are satisfied.

The portion of the hotel site that is within 50 feet of the high water mark of the Columbia River is subject to an environmental protection overlay zone. A landowner seeking to develop property within that zone would need to obtain individualized "environmental review." Thunderbird asserts that its plans for redevelopment would not have been subject to that review, because it did not plan any development within the overlay zone.

Beginning in late 2004 or early 2005, Thunderbird negotiated with Wal–Mart for the placement of a Wal–Mart store on the hotel site. In a contract that was effective September 30, 2005, Thunderbird agreed to sell the hotel site to Wal–Mart, and warranted that it was unaware of any facts that would adversely affect Wal–Mart's ability to develop a retail facility on the site. The agreement was amended on April 13, 2006, to specify that Thunderbird would not be responsible for demolishing structures on the site, and the purchase price was reduced from $26,000,000 to $25,000,000. Thunderbird and Wal–Mart proceeded under the agreement through the summer and early fall of 2006.

During the early summer of 2006, Pacland, Wal–Mart's architectural and design firm, asked for a conference with Portland City building officials. This request informed City officials of Wal–Mart's intention to locate a store on the site.

In July, 2006, the Portland City Council passed a resolution directing City staff to compile information and initiate processes that would allow the Council to consider the imposition of a moratorium on development on Hayden Island. In his blog posting on commissionersam.com dated July 6, 2006, defendant Adams, who was then a City Commissioner, stated that the resolution was intended to: 1) stop Wal–Mart or another big-box retailer from building on the Thunderbird hotel site; 2) stop the Jantzen Beach SuperCenter from replacing its existing buildings with a "strip mall;" and 3) require that development of the hotel site and rebuilding at the Jantzen Beach SuperCenter "wait until an alignment is chosen for the new $1.5 billion Columbia River Crossing." Adams added that, though he was "passionate about the plight of Portland's working class" and felt "very protective of our small businesses against Wal–Mart's predatory business practices," he "would be concerned about enacting a moratorium focused on the development plans of only one company."

On October 4, 2006, the Portland City Council enacted an ordinance imposing a six-month moratorium on most commercial and industrial development on Hayden Is-

land. The moratorium provided that, with certain exceptions, the City would not issue permits or land use approvals for "a new building, a change to the interior of an existing building, or an increase in the floor area of an existing building" for six months.[1]

In imposing the moratorium, the Council declared that

> an emergency exists because new development in commercial and industrial zoned areas on Hayden Island will negatively affect the transportation facilities serving Hayden Island and may compromise the outcome of the corrective program and facilities....

The ordinance cited traffic congestion as a major problem on the island. It cited congested weekday traffic conditions on I-5 in the vicinity of Hayden Island that limited access to the island and affected the functioning of the ramps and portions of the island's street system, the absence of sufficient transit services, an inadequate road system on the island, and the potential for significantly increased commercial development on the island, which would add a large number of vehicle trips to a congested freeway system and the island's substandard street system. The ordinance also cited the efforts that were underway to "analyze and select a preferred alternative for an improved bridge crossing over the Columbia River in the vicinity of Hayden Island."

On the same day that the moratorium was enacted, Wal–Mart issued a press release stating that Wal–Mart and Thunderbird had jointly decided that placing a Wal–Mart store on the hotel site did not "make economic sense...." The statement added that Wal–Mart's decision

> not to pursue a new store on Hayden Island is purely a business decision

based on basic economics and cost analysis of purchasing the property and constructing the store, and is not a response to Portland Commissioner Sam Adams' proposed temporary development moratorium on the island.

Thunderbird asserts that it neither authorized nor agrees with those statements.

On January 5, 2007, Wal–Mart informed Thunderbird that it had decided to terminate the agreement to purchase the hotel site.

Thunderbird and Jantzen Dynamic Corporation appealed the City's imposition of the moratorium on Hayden Island development to the Oregon Land Use Board of Appeals (LUBA).

On March 29, 2007, the Portland City Council passed an ordinance extending the development moratorium from April 4, 2007, through July 5, 2007. On June 7, 2007, the City Council voted to extend the moratorium until January 1, 2008, and to amend certain substantive terms of the moratorium.

In a decision issued on June 22, 2007, LUBA invalidated the original moratorium on the grounds that it had failed to accommodate as much economic development as possible, as required by Or.Rev.Stat. § 197.520(2)(c). *Thunderbird Hotels, LLC v. City of Portland, Oregon*, 54 Or LUBA 487, 2007 WL 1964231.

All parties appealed LUBA's decision to the Oregon Court of Appeals. In a decision issued on March 19, 2008, the Court of Appeals held that the City lacked the authority to both amend and extend the moratorium at the same time, as it had done on June 7, 2007. *Thunderbird Hotels, LLC v. City of Portland*, 218 Or.App. 548, 180 P.3d 87 (2008). The Court of Appeals

---

1. The ordinance excepted work that would "not add more parking spaces" or "generate more vehicle trips than the prior use."

accordingly concluded that both the second extension of the ordinance, adopted on June 7, 2007, and a third extension, adopted on November 28, 2007, were invalid. On April 3, 2008, LUBA dismissed Thunderbird's appeal as moot on the grounds that, under the Court of Appeals' decision, the moratorium had expired on July 6, 2007. However, as a practical matter, the moratorium was in place from November, 2006, until April, 2008.

I–5 provides the only non-marine access to Hayden Island, and any development or re-development on Hayden Island that increases or alters traffic patterns on I–5 and its ramps is a matter of concern to the Oregon Department of Transportation (ODOT). ODOT actions affect Hayden Island and the City's transportation planning process. State and federal agencies are investigating options for rebuilding, replacing, or supplementing the existing I–5 Bridge, and Oregon and Washington have issued a Draft Environmental Impact Statement (DEIS) addressing various options for constructing a new bridge.

The City of Portland is a sponsor of a project known as the "Columbia River Crossing Study." As a project sponsor, the City has a position on an advisory committee, and makes recommendations concerning bridge options. Though the City does not have decision-making authority with respect to the bridge, the Portland City Council has passed resolutions commenting on the crossing proposal and the DEIS. The City has endorsed the "Locally Preferred Alternative" for the river crossing, which calls for construction of a new bridge.

Federal agencies must issue a Final Environmental Impact Statement (EIS) and a Record of Decision before a "preferred" alternative concerning the I–5 Bridge can be selected. If the decision is made to build a new bridge, the federal government, Oregon, and Washington will be responsible for providing financing for the construction.

The parties agree that the hotel site is the only large parcel of vacant land in the area of the present I–5 Bridge where a new bridge crossing the Columbia River could be built, and all of the "build" alternatives for a Columbia River bridge include bridge and ramp construction across the site. The parties also agree that the "responsible authorities" have not yet decided what action to take concerning the I–5 Bridge. Thunderbird contends that this uncertainty "demonstrates impropriety of the moratorium," because the City justified the moratorium "by a process that the City knew would require more time than the City could gain from . . . enacting the original moratorium and the maximum number of extensions allowed."

In early 2007, the City began a planning process that resulted in the creation of the "Hayden Island Plan." The Hayden Island Plan was adopted by the Portland City Council on August 19, 2009, and became effective on September 18, 2009. The Plan assumes that a new Columbia River bridge will be built, and states that a new waterfront park should be built on Thunderbird's hotel site. This park can be built only if the City or another governmental entity acquires some or all of the hotel site. Thunderbird asserts that the Hayden Island Plan "increases the intensity of land use on Hayden Island and increases traffic beyond expected planned I–5 ramp improvements," demonstrating the lack of a rational basis for the moratorium. Thunderbird also contends that, though the plan has not yet been implemented, it already adversely affects the value of its property.

Thunderbird agrees that no proposal to change the current CG zoning designation for its property is now pending. It asserts, however, that enactment of the mor-

atorium on October 4, 2006, effectively foreclosed development of the hotel site by halting all development in the CG zone. Thunderbird contends that the hotel site "would not qualify for any exemption" either under the moratorium as originally enacted, or as later amended. It adds that, even though the property is currently zoned CG, "there is no economically viable use for the Thunderbird property as a result of the moratorium, its extensions, and the proposal to locate a new I–5 Bridge on or across all or part of the Thunderbird property." Thunderbird has submitted the opinion of a real estate appraiser who states that its property has been adversely affected by the City's actions set out above, and that Thunderbird's hotel site "is not marketable because of the actions taken by the City of Portland and the general knowledge of the property." The appraiser adds that "[n]o buyer or developer would be interested in developing or purchasing the Thunderbird property under these circumstances and no financing would be possible for its development."

## PLAINTIFF'S CLAIMS

Plaintiff Thunderbird's complaint essentially challenges three different actions through which it alleges the City has violated its rights. These are: 1) publication of the Draft Environmental Impact Statement concerning the environmental effects of a new bridge over the Columbia River; 2) the City's creation of the Hayden Island Concept Plan, which impacts future land use development on Hayden Island; and 3) the City's imposition of a moratorium on development on Hayden Island that was effective from November, 2006, through early April, 2008.

Plaintiff brings three claims based upon these actions. The first claim, captioned "Inverse Condemnation," alleges that the development moratorium and its extensions, the Hayden Island Final Concept Plan, and the Columbia River Crossing Projects DEIS, in which the City of Portland was a partner,

constitute a taking of private property for public purposes without payment of just compensation in violation of Article 1, Section 18, of the Oregon Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

Plaintiff seeks recovery of "just compensation of $25,000,000, representing the fair market value of the hotel site on October 4, 2006," plus interest from that date until paid.

The second claim is captioned "Denial of Civil Rights—Due Process." In this claim, plaintiff alleges that defendants' adoption of the development moratorium and its extensions, "was arbitrary and pretextual as applied to plaintiff." Plaintiff alleges that the moratorium was intended "to prevent a redevelopment of the hotel site that was lawful and permitted by its CG zoning." Plaintiff further alleges that defendants adopted the moratorium "for an unlawful reason, namely defendant Adams' belief that plaintiff's intended purchaser, Wal–Mart, 'fails the basic test of ethical capitalism' and that redevelopment of the hotel site should be delayed or denied until Wal–Mart 'matured into a responsible corporate citizen.'" It also alleges that defendants "intended the extensions of the moratorium to prevent any retail redevelopment of the hotel site at any time ... even though such redevelopment would be lawful and permitted by the CG zoning of the property." Plaintiff alleges that defendants' adoption and extension of the development moratorium have deprived it of its right to due process secured under the Fourteenth Amendment to the United States Constitution.

Plaintiff's third claim is captioned "Denial of Civil Rights—Equal Protection." In this claim, plaintiff alleges that, in adopt-

ing and extending the moratorium on development on Hayden Island, defendants arbitrarily and irrationally intended to, and did, deprive plaintiff, and only plaintiff, of its right to redevelop its property, in that the moratorium and its extensions permitted other owners of retail-use property in CG zones on Hayden Island ... to develop or redevelop their property notwithstanding defendant Portland's finding that the existing transportation facility capacity of Hayden Island was exceeded.

Plaintiff alleges that this conduct violated its right to equal protection secured by the Fourteenth Amendment to the United States Constitution.

## STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. *Id.* at 630–31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

Defendants contend that they are entitled to summary judgment because:

1. Adams, who is now the Mayor of Portland, is not a proper party;

2. The court lacks jurisdiction because Thunderbird's claims are not ripe;

3. The City of Portland is not a proper defendant as to any claims based upon the Columbia River Bridge DEIS;

4. Thunderbird's equal protection claim fails because plaintiff was not treated differently than other similarly situated landowners on Hayden Island;

5. Thunderbird's equal protection and substantive due process claims fail because the development moratorium was based upon rational concerns about excessive traffic and inadequate public facilities; and

6. Thunderbird's "takings" claim fails because plaintiff was not deprived of all economic uses of its property.

1. *Capacity in which Adams took actions at issue here*

During the times relevant to this action, defendant Adams was one of five City Commissioners, and was in charge of the Portland Department of Transportation.

■ The parties correctly agree that local officials like Adams are absolutely immune from liability pursuant to 42 U.S.C. § 1983 for their "legislative acts," *e.g., Bogan v. Scott–Harris*, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), but may be liable for acts taken in their administrative or executive capacities. *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th Cir.2003). They disagree as to whether material issues of fact exist concerning the proper characterization of Adams' conduct concerning the moratorium.

■ The United States Supreme Court has been "sparing in its recognition of claims to absolute official immunity," *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), and individuals seeking to establish such immunity bear the burden of establishing that it applies. *Trevino v. Gates*, 23 F.3d 1480, 1482 (9th Cir.1994). In determining whether an action is properly characterized as "legislative," courts in this Circuit consider the following four factors: 1) whether the act involves "ad hoc" decision making or the formulation of "policy"; 2) whether the act applies to only a few individuals, or to the public at large; 3) whether the act is "formally legislative"; and 4) whether the act bears the "hallmarks of traditional legislation." *Kaahumanu*, 315 F.3d at 1220 (*quoting Bechard v. Rappold*, 287 F.3d 827, 829 (9th Cir.2002)). Enactment of a general zoning ordinance that affects all parcels within the covered area is a legislative act because it reflects policy decisions. *See id.* at 1220–21 (*citing Kuzinich v. Santa Clara County*, 689 F.2d 1345, 1349 (9th Cir.1982)). A zoning action that singles out specifiable individuals whom it affects differently from others is considered "administrative." *Id.* at 1220 (*citing Haskell v. Washington Township*, 864 F.2d 1266, 1278 (6th Cir.1988)). Ordinances affecting a single parcel of land that have "no further force or effect" are considered administrative. *Id.*

■ Thunderbird does not dispute that Adams' conduct in voting to enact and extend the development moratorium in his role as a City Commissioner was "legislative" in nature, and subject to absolute immunity. It contends, however, that

> under the City's unique form of government, his roles in beating the anti–Wal-Mart drums on his website, promoting the moratorium, and directing PDOT to prepare the studies that were subsequently incorporated into the moratorium ordinances were *administrative* in nature.

Thunderbird notes that the City's own website characterizes the Commissioner's conduct in administering City departments, and "individually overseeing bureaus and carrying out policies approved by the Council" as "administrative."

Under the guidance of the decisions cited above, I conclude that Adams' conduct upon which this action is predicated can only be fairly construed as of a "legislative" nature, and that Adams is therefore entitled to absolute legislative immunity and should be dismissed from this action. There is no question that defendant Adams expressed his opposition to Wal-Mart on his website, promoted the moratorium, and directed the City Department of Transportation to prepare traffic studies upon which the moratorium was, at least in part, based. However, it was Adams' participation in the adoption and extension of a development moratorium on Hayden Island that provides the basis for Thunderbird's claims against him in this action.

■ All of the requirements for determining that an official's act are "legislative" are satisfied here. The ordinance enacting the development moratorium was "formally legislative in character," and its

adoption, after debate in open session following a public hearing, bore "all the hallmarks of traditional legislation." The ordinance and its extensions were not ad hoc decisions, but instead reflected policy decisions concerning a regional transportation system and development on Hayden Island as a whole. Finally, though the development moratorium clearly impacted Thunderbird's hotel site, its application was not limited to only "a few individuals" rather than to "the public at large." Instead, the moratorium applied to all commercial property on Hayden Island, and consequently affected many commercial property owners. Defendants correctly note that, though the immediacy of the impact of the moratorium varied according to whether a property owner "had plans for rapid land use changes," the ordinance "applied *equally* to all owners of commercial property on Hayden Island." Reply Memorandum in Support of Defendants' Motion for Summary Judgment at 3 [emphasis in original]. Even if zoning ordinances affect some owners and entities more significantly than others, they are legislative acts for which members of local legislative bodies have immunity. *See Kuzinich,* 689 F.2d at 1349.

2. *Ripeness of Thunderbird's Federal Due Process, Equal Protection, and Takings Claims*

a. *Federal Due Process and Equal Protection Claims*

Defendants contend that they are not proper parties as to any federal due process and equal protection claims that are based upon the DEIS, and that any claims based upon the DEIS and the Hayden Island Concept Plan are not ripe for judicial review.

In response, Thunderbird asserts that it does not challenge either the DEIS or the Hayden Island Concept Plan as procedurally or substantively defective, and does not allege that either of these actions "per se constitutes a taking of its property." Plaintiff's Memorandum In Opposition to Defendant's Motion for Summary Judgment at 12. Thunderbird concedes that its federal claims "will not be ripe for adjudication unless and until" its state law inverse condemnation claim fails, and asserts that the court should stay further proceedings on it federal claims pending resolution of the state law inverse condemnation claim. *Id.* at 8–9. It nevertheless contends that its federal claims "are ripe in the 'substantive' sense." *Id.* at 10.

Defendants' assumption that plaintiff's federal claims are based at least in part on the DEIS and Hayden Island Final Concept Plan is understandable: As noted above, in its first claim, plaintiff alleges that the DEIS and Final Concept Plan "in which defendant Portland is a project partner constitute a taking and appropriation of plaintiff's private property for public purposes without payment of just compensation in violation of Article 1, Section 18, of the Oregon Constitution and the Fifth and Fourteenth Amendments to the United States Constitution." With plaintiff's present clarification that it does not allege that the DEIS or the Hayden Island Concept Plan constitute a taking of its property, I need not further address defendants' contention that they are not proper parties as to any claims based upon those actions. Though defendants' contentions that they are not proper parties to any claim based upon the DEIS and that claims based upon the Hayden Island Concept Plan are not ripe appear to be well taken[2], given plain-

2. Defendants correctly note that the City did not write or produce the DEIS, that decisions concerning construction of a new I–5 bridge will be made by the United States Federal Highway Administration and the Federal Transit Administration, and that any ultimate acquisition of Thunderbird's property for

tiff's explicit denial that it bases any takings claims on those documents, I need not formally address that issue.

 Defendants' contention that plaintiff's federal claims are not ripe is well taken. Constitutional challenges to land use restrictions "as applied" are ripe only if a property owner or developer has applied for and received a governmental agency's " 'final, definitive position regarding how it will apply the regulations at issue to the particular land in question.' " *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1232 (9th Cir.1994) (*quoting MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 351, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986)). This requires a land owner to submit at least "one formal development plan" and seek a variance from restrictions barring development before bringing a federal constitutional challenge. *Id.* (*citing Herrington v. County of Sonoma,* 857 F.2d 567, 569 (9th Cir.1988)). A recognized "futility exception," relieves an owner or developer of the obligation of resubmitting a development plan or applying for a variance from "prohibitive regulations" before bringing a federal claim if doing so would be futile. *Id.* (*citing Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1501 (9th Cir.1990)). However, regardless of this exception, a party must file at least one "meaningful development proposal" before a challenge to the land use restriction in question is ripe. *Id.* (*citing Herrington,* 857 F.2d at 569).

Thunderbird never applied for permission to redevelop the hotel site. It nevertheless argues that it should be excused from the requirement that at least one application be rejected in order for a case to become ripe because: 1) it asserts a "facial" rather than an "as applied" challenge to the City's land use restrictions; 2)

a major retail outlet offers the only economically viable use of the hotel site; 3) the City has informally rejected less intensive uses for the property; and 4) ongoing planning for a new I–5 bridge has impaired the marketability of its property. It also argues that the application requirement does not apply if the challenged restriction is "arbitrary, capricious and unreasonable on its face," and that different rules should apply here because "this case appears to be *sui generis.*" Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 11.

 Based upon a careful review of the material facts that are not in dispute, and upon relevant decisions, I conclude that plaintiff's due process and equal protection claims are not ripe. Thunderbird's challenge is best characterized as an "as applied" rather than a "facial" challenge, because it is based largely upon the assertions that the moratorium applied to it in ways it did not apply to other property owners, and that the process of choosing an I–5 bridge alternative and constructing a new bridge affects the hotel site in unique ways. Thunderbird's assertions that a big-box outlet is the only viable use of the hotel site, that planning for the bridge has impaired the marketability of the site, and that application for a development permit would be futile are speculative at this point. It is just such speculation that underlies the requirement that permission to develop be sought and denied before federal claims are ripe. *See Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1454 (9th Cir.1987) (reversing district court, that had waived application requirement and examined existence of remaining beneficial uses and marketability of property, on grounds that such inquiry resulted in sort of speculation prohibited by ripeness requirement). Nor is the

bridge construction would be carried out by

entities other than the City of Portland.

challenged restriction here "arbitrary, capricious and unreasonable on its face," rendering the "meaningful application" rule inapplicable. The moratorium was facially neutral and temporary,[3] and was supported by a detailed and reasoned statement setting out the need for and purpose of the moratorium. Moreover, Thunderbird's belief that there is no economically viable use for the hotel site following expiration of the moratorium has not been tested by the kind of application for a development plan required in this sort of action. Under these circumstances, there is no basis for waiving the requirement that a landowner or developer submit at least one "meaningful application" for permission to proceed with development plans before bringing federal due process and equal protection claims.

Thunderbird's contention that "[t]he problem in this case appears to be *sui generis*" does not support the conclusion that the "meaningful application" requirement should be suspended. In support of its assertion that the circumstances here are unique, Thunderbird notes that the City "does not control the pace or the duration of the Columbia River Crossing project's planning, design, or property acquisition functions," and asserts that there is no reason to believe that the City had any greater control over this process "on or before October 4, 2006." This suggests

that Thunderbird has problems with entities other than the City. To the extent Thunderbird is challenging the City's expired moratorium on development on Hayden Island, the challenge does not appear to be unique. Instead, Thunderbird seeks to challenge the City's land use rules under its due process and equal protection claims without having ever sought approval of a development plan. In the absence of such an application, these claims are not ripe.

b. *Federal Takings Claim*

As noted above, though Thunderbird concedes that its federal claims are "unripe in the *jurisdictional* sense," they are nevertheless "ripe in the 'substantive' sense." It further asserts that, if its federal takings claim becomes ripe, it will contend that the taking is "of the *Penn Central*" type. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 12.

Plaintiff's concession that its federal takings claim is not ripe is correct for two reasons. First, as noted above, a federal constitutional challenge to land use restrictions is not ripe until a landowner or developer has made a meaningful application and has received a final definitive decision rejecting a proposed development. Second, a federal Fifth Amendment takings

---

**3.** Though my conclusion that plaintiff's federal claims are not ripe makes it unnecessary to reach this question, I note that, given its relatively brief duration, it is unlikely that plaintiff can establish that the moratorium constituted an unreasonable or excessive impediment to the use of the hotel site. The Ninth Circuit has noted that, "for a delay to be excessive, it must be substantial, 'since the Supreme Court has held a claim to be unripe even where the application process covering a development project required approximately eight years.' " *Kawaoka*, 17 F.3d at 1233 [citations omitted]. The United States Supreme Court has characterized fluctuations in property value that oc-

cur during a governmental decision process that does not involve extraordinary delay as "incidents of ownership" that do not constitute a "taking." *Agins v. Tiburon*, 447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) [citations omitted] *abrogated on other grounds, Lingle v. Chevron U.S.A., Inc.* 544 U.S. 528, 532, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). In addition, the Ninth Circuit has cited with approval a district court's conclusion that a one and a half year moratorium is not a "taking." *Kawaoka*, 17 F.3d at 1233 (*citing Zilber v. Town of Moraga*, 692 F.Supp. 1195, 1206 (N.D.Cal.1988)).

claim arises only after there has been a determination that compensation for the alleged takings is not available under state law. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (property owner has not suffered violation of just compensation clause until owner has unsuccessfully pursued remedies available under state law). Here, no such determination has been made, and the merits of plaintiff's state law takings claim are not ripe for review.

Given that Thunderbird has neither made a "meaningful application" for permission to proceed with a development plan that has been rejected nor attempted and failed to secure compensation under state law, its federal takings claim is not ripe. In the absence of any application for a new use of its property or a failed attempt to obtain compensation under state law, plaintiff's federal takings claim is simply not ripe for adjudication before this court. Under these circumstances, Thunderbird's assertion that it will pursue a federal takings claim if such a claim becomes ripe is not a sufficient basis for denying defendants' motion for summary judgment at this time.

### 3. *Ripeness of Thunderbird's State Law Takings Claim*

Defendants contend that Thunderbird's state takings claim, like its federal takings claim, is not ripe.

I agree. The standards for determining whether takings claims are ripe under Oregon law are at least as rigorous as those applied by federal courts to test the ripeness of federal takings claims. Though state courts, like federal courts, apply a "futility" exception to ripeness rules, the parties have cited, and I have found, no reported decisions in which an Oregon court has allowed a landowner or developer who had not had at least one "meaningful application" for development denied to obtain judicial review of a takings claim based upon Oregon law. Instead, as defendants correctly note, Oregon courts consider the ripeness requirement satisfied only if a landowner or developer has both filed one application *and* pursued any alternative approaches available for obtaining the permission sought. In *Larson v. Multnomah County*, 123 Or.App. 300, 304, 859 P.2d 574 (1993), for example, the court concluded that a property owner who had not pursued alternative approaches following denial of a single application for development had "failed the most minimal test for ripeness...." This conclusion is consistent with other Oregon decisions. *See Boise Cascade Corp. v. Board of Forestry*, 186 Or.App. 291, 63 P.3d 598 (2003); *Curran v. State of Oregon Dept. of Transp.*, 151 Or.App. 781, 951 P.2d 183 (1997); *Joyce v. Multnomah County*, 114 Or.App. 244, 835 P.2d 127 (1992).

As defendants correctly note, Thunderbird never applied for any new use of its hotel site at any time before, during, or after the moratorium. Thunderbird's assertion that such an application was unnecessary because it would have been futile is not persuasive. Under both state and federal law, a landowner or developer cannot rely on the futility exception to the ripeness requirement until it has made a "meaningful application" to develop or use its land. Under Oregon law, it is also necessary to seek a zoning or rule change after an initial application has been denied. The informal discussions or negotiations that Thunderbird's land use attorney asserts were held "through or coordinated with the office of Commissioner Adams" cannot substitute for a formal application for an official decision by the City, and cannot establish that it would have been futile for Thunderbird to seek approval for development plans. In the absence of a

formal application for permission to carry out a development plan, and an attempt to seek a zoning change or variance if that application were denied, Thunderbird cannot establish that its state taking claim is ripe.

4. *Merits of Thunderbird's Equal Protection and Due Process Claims*

Defendants contend that, if this court reaches the merits of plaintiff Thunderbird's Equal Protection and Due Process claims, it is entitled to summary judgment on those claims. Because these claims are not ripe, I conclude that it is neither necessary nor appropriate to consider their merits at this time.

## CONCLUSION

Defendants' motion for summary judgment (# 10) should be GRANTED. A judgment should be entered dismissing plaintiff's claims against the City of Portland without prejudice, and dismissing the claims against defendant Adams with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due October 16, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 30th day of September, 2009.